UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Gary L. Waldron,

    Plaintiff,   : Case No. 2:20-cv-06272

 - vs -       Judge Sarah D. Morrison

           Magistrate Judge Chelsey Vascura

Wal-Mart, Inc.,

         :

    Defendant.

**OPINION & ORDER**

In this employment discrimination case, Defendant Wal-Mart, Inc. ("Walmart") moves to dismiss Plaintiff Gary L. Waldron's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 8.) Waldron opposed the Motion to Dismiss (ECF No. 12) and Walmart filed a Reply (ECF No. 17). After due consideration, the Court **GRANTS** the Motion to Dismiss. (ECF No. 8.)

Waldron also filed a Motion for Leave to File Sur-Reply, which is unopposed. (ECF No. 18.) The Court **DENIES** the Motion for Leave.

**I. MOTION FOR LEAVE TO FILE A SUR-REPLY**

Waldron filed a Motion for Leave to File a Sur-Reply to Walmart's Reply in Support of its Motion to Dismiss. This motion is unopposed. Waldron requested this sur-reply "to correct and clarify Defendant's citations to legal authority, misstatements of law, and applicable facts ensuring that the Court is fully informed of all facts and law in deciding the pending motion to dismiss." (ECF No. 18.) The

1

Court is capable of performing this function. The Motion for Leave to File a Sur-Reply is **DENIED.**

## II.  BACKGROUND

In adjudicating the Motion to Dismiss, the Court accepts as true all well-pleaded factual allegations from the Complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-9 (2009).

Waldron is a Caucasian male. (ECF No. 1 ¶ 4.) Walmart hired him in November 2019 to work at the Gallipolis, Ohio store. (ECF No. 1, ¶¶ 7, 12.) Within three days of Waldron's hiring, management moved Waldron from his initial position to an Asset Protection Associate because of his background in law enforcement. *Id.*, ¶ 8. Walmart thoroughly trained Waldron in loss prevention procedures and techniques at three separate Walmart stores. (*Id.*, ¶ 11.)

Karen Watson, Waldron's direct supervisor, instructed Waldron during his training and subsequent employment that he was to perform the role of a "door greeter" if one was not present. (*Id.*, ¶ 37.) Doing so required that Waldron conduct receipt checks when he suspected theft. (*Id.*, ¶ 38.) Receipt checks for suspicion of theft were regularly performed at the Gallipolis Walmart, and the procedure consisted of checking the receipt of any customer suspected of theft to ascertain that all items had been paid for by the customer. (*Id.*, ¶¶ 20, 21.)

On July 2, 2020, Waldron observed an African American female customer ("Customer") take seven bottles of wine from her shopping cart and place them directly into a bag without scanning each individual bottle at the self-checkout

2

register. (*Id.*, ¶ 15.) Waldron checked the electronic receipt for that transaction from his surveillance equipment but failed to notice the bottles of wine on the receipt and suspected that the Customer had not paid for the wine. (*Id.*, ¶ 16.) Waldron contacted customer service manager Bridget Wright and the two approached the Customer to perform a receipt check. (*Id.*, ¶¶ 17, 19.) Waldron identified himself as an Asset Protection Associate, and he attempted to check the Customer's receipt in accordance with his training. (*Id.*, ¶¶ 18-21.) While Waldron conducted the receipt check, the Customer reacted belligerently by yelling, throwing her hands around, and shouting that Waldon was only checking her receipt because she was Black. (*Id.*, ¶ 23.)

During the altercation, Waldron called the Gallipolis Police Department and stated he was concerned about the safety of Walmart's customers and employees. (*Id.*, ¶ 29.) Waldron's call to the police was prompted by his worry that the Customer might become violent, and by the Customer's assertion that her husband was going to come to the store and Waldron's worry that he could become violent as well. (*Id.*, ¶ 26.)

At some point, the self-checkout cashier confirmed that the Customer had in fact paid for the wine. (*Id.*, ¶ 30.) Waldron then informed the Customer that her payment had been verified and he did not need anything else from her. (*Id.*, ¶ 31.) Waldron called the Gallipolis Police Department a second time to inform the officers that the situation had been resolved and they were no longer needed. (*Id.*, ¶ 34.)

The police officers did enter the store on their own accord after hearing the Customer yelling and they escorted the Customer out of the store. (*Id.*, ¶¶ 35-36.)

Waldron had performed receipt checks on Caucasian customers in similar situations (where they suspected customers had not paid for goods but the receipt check proved the customers had in fact purchased the goods) and had not been reprimanded in those instances. (*Id.*, ¶ 43.)

On or about July 3, 2020, the Customer made a Facebook post directed to Walmart claiming that she had been racially profiled at their Gallipolis store and that she was organizing a protest at that location. (*Id.*, ¶ 44.)

Waldron met with Watson's supervisor, Angela Conrad, on July 5, 2020 to discuss the situation. (*Id.*, ¶ 46.) At that meeting, Conrad told Waldron that the situation would probably be different "if the woman was not black." (*Id.*, ¶¶ 46-47.) Two days later, Watson and store manager Rickey Gainey fired Waldron.

Waldron timely filed charge No. 473-2020-01393 ("EEOC Charge") with the Cincinnati Area Office of the Equal Employment Opportunity Commission against Defendant Walmart alleging reverse race discrimination in his termination. (ECF No. 1-2.) The EEOC issued Waldon's right to sue letter on September 11, 2020. (ECF No. 1-3.)

Waldron then filed the instant Complaint. (ECF No. 1.) Waldron asserts claims for federal and state race discrimination and for wrongful termination in violation of public policy.

4

### III. STANDARD OF REVIEW

In deciding a Motion to Dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and must make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The plaintiff need not plead specific facts, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

### IV. ANALYSIS

#### A. Counts I and II

Count I is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)) *et seq.,* which states that it is an unlawful employment practice:

> For any employer to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin.

Count II is that Walmart violated Ohio R.C. 4112.02(A) by terminating Waldron. R.C. 4112.02(A) provides that it shall be an unlawful discriminatory practice:

> For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

The scope of § 4112.02(A) is identical to that of the federal anti-discrimination statutes laid out in Title VII, *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio C.R. Comm'n*, 66 Ohio St. 2d 192 (1981), so Waldron's federal and state claims will be considered together.

To recover on his claims, Waldron will ultimately need to either provide direct evidence of reverse race discrimination or raise an inference of discrimination by sufficiently demonstrating a *prima facie* case of discrimination. *Kline v. TVA,* 128 F.3d 337, 348 (6th Cir. 1997). On this point, Mr. Waldron is correct that there is a distinction between the evidentiary standards for surviving summary judgment and the pleading requirements for a complaint. (*See*, Memo Contra, ECF No. 12, pp. 3-5). Nevertheless, a plaintiff must still satisfy the 'plausibility' standard in *Twombly* to determine whether the factual allegations in a complaint support the legal conclusions. *Vigil v. STS Sys. Integration, LLC,* No. 3:18-cv-324, 2019 U.S. Dist. LEXIS 164453, at 9 (S.D. Ohio Sep. 25, 2019) (Rice, J.). And the elements of a *prima*

6

*facie* case are useful considerations when determining the plausibility of a discrimination claim. *Finley v. Miami Univ.,* 504 F. Supp. 3d 838, 844 (S.D. Ohio Nov. 30, 2020) (Cole, J.). Although detailed factual allegations are not required in the Complaint, there must be sufficient factual content that a court using its "judicial experience and common sense" can "draw the reasonable inference" of discrimination. *Id.* (citations omitted). Accordingly, while Waldron need not mechanically recite the elements of a *prima facie* case, he must allege a sufficient factual basis that Walmart terminated him on the discriminatory basis of his race.

Here, Waldron alleges reverse race discrimination, but he does not allege direct evidence of discrimination.

For a circumstantial case of reverse race discrimination claims, the Sixth Circuit has modified the traditional *McDonnell Douglas* framework to require that a plaintiff bear a heightened burden of demonstrating that he was intentionally discriminated against despite his majority status. *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003); *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004). The modified first prong of the *prima facie* case requires a plaintiff alleging reverse racial discrimination to demonstrate background circumstances which suggest that the defendant is the unusual employer that discriminates against the majority. *Sutherland,* 344 F.3d at 614. The second and third prongs remain unchanged from the conventional framework, and they require a plaintiff demonstrate that he was qualified for his job and that he suffered an adverse employment action. *Id.* The fourth prong is modified to require the plaintiff show

7

that he was treated differently than similarly situated employees of a different race. *Id.*

Waldon fails to allege facts which would suggest that Walmart is the unusual employer that discriminates against the majority. The Sixth Circuit has held that when a majority of employees in the plaintiff's position are white, such a fact is contrary to the plaintiff's assertion that the employer discriminates against the majority. *See, Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 68 (6th Cir. 1985). Every Asset Protection Associate at this Walmart store location at the time of the incident was white. Additionally, Waldron does not allege facts that support the inference that his termination was related to *his* race. The only factual assertions in the Complaint regarding race are in reference to the Customer's race. Waldron alleges no facts that support the inference that Walmart is the unusual employer which discriminates against the majority.

Waldron similarly fails to allege facts that satisfy the fourth prong requiring he show that he was treated differently than similarly situated employees of a different race. While Waldron does allege that he was "treated differently" on the basis of his race, he fails to assert any facts that support this claim. He fails to allege that any non-Caucasian similarly situated employees were treated differently than he, and he cannot make such an allegation because every Asset Protection Associate employed at this Walmart store at the time of the incident was white. Waldron's failure to allege any non-Caucasian similarly situated employees treated

8

more favorably undermines his claims that Walmart discriminated against him based on his race.

The Court cannot "draw the necessary inference from the factual material stated in the complaint" such that "the plausibility standard has been satisfied." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). Walmart's Motion to Dismiss Counts I and II of the Complaint is **GRANTED**. (ECF No. 8.)

### B.   Count III

Count III alleges that Walmart's termination of Waldron on the basis of his race violates Ohio public policy embodied in Ohio Revised Code Chapter 4112, *et seq.*, designed to protect Ohio citizens from race discrimination in employment. This claim also fails as a matter of law.

Under Ohio law, a claim of wrongful termination requires that a plaintiff prove the following four elements: 1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law; (2) in general, dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy; (3) the plaintiff's dismissal was motivated by conduct related to the public policy; and (4) the employer did not have a legitimate business justification for the dismissal. *Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 707–08 (S.D. Ohio 2014) (Dlott, J.).

To establish the second element, the plaintiff must also demonstrate that there is no other remedy available. *Id.* The Ohio Supreme Court explained:

9

> An analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful discharge claim....Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies for its breach, "the issue of adequacy of remedies" becomes a particularly important component of the jeopardy analysis.... Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.

*Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 531 (Ohio 2002). This Court has held "it is well-established that wrongful discharge in violation of state public policy claims fail where other statutes provide adequate protection and remedies." *Chenzira v. Cincinnati Children's Hosp. Med. Ctr.*, No. 1:11-CV-00917, 2012 WL 6721098, at 4 (S.D. Ohio Dec. 27, 2012) (Spiegel, J.). This Court previously held that Ohio Revised Code Chapter 4112 provides an adequate remedy for race discrimination, so that a common law wrongful discharge claim for violating public policy established by Chapter 4112 does not exist. *Shields v. Sinclair Media III Inc.*, No. 2020 U.S. Dist. LEXIS 110099, at 43 (June 22, 2020) (Cole, J.). Because Chapter 4112 provides an adequate remedy for race discrimination in employment, Waldron's public policy claim fails as a matter of law.

Walmart's Motion to Dismiss Waldron's violation of Ohio public policy claim is **GRANTED**.

V.  **CONCLUSION**

The Court **DENIES** Waldron's Motion for Leave to File a Sur-Reply. (ECF No. 18.) The Court **GRANTS** Walmart's Motion to Dismiss (ECF No. 8) Waldron's

10

Title VII and Ohio Revised Code Chapter 4112 reverse race discrimination claims, as well as Waldron's wrongful termination in violation of Ohio public policy claim.

**IT IS SO ORDERED.**

<u>/s/ Sarah D. Morrison</u>
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**